FILED

2023 Apr-11  AM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD FRANKWOSKI, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:22-cv-1153-ACA** |
| | ] | |
| **ARMSTRONG TRANSFER &** | ] | |
| **STORAGE CO., INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Over the course of Plaintiffs Richard and Christeen Frankowski's move from Nevada to Alabama, they hired six professional moving companies to transport their household goods and the contents of a storage unit. After a delay, their goods arrived with substantial damage. They have sued the six moving companies: (1) Armstrong Transfer & Storage Co., Inc., "aka Armstrong Relocation Company"; (2) Evergreen Van Lines, Corp.; (3) Mayflower Transit, LLC; (4) Polaris Moving Systems, Inc., d/b/a Roadrunner Moving; (5) S&M Moving Systems, Inc.; and (6) United Van Lines, LLC. The Frankowskis assert against each of the six defendants claims for liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1), or alternatively for state law tort and breach of contract. (Doc. 1 at 6–7). They seek compensatory damages for the property damage as well as punitive and mental anguish damages. (*Id.* at 7).

The four defendants who have appeared in the case thus far—Armstrong, Mayflower, S&M Moving, and United Van Lines—have filed a joint motion to partially dismiss the complaint. (Doc. 11). Defendants seek dismissal of all the state law tort and contract claims, of the demand for punitive and mental anguish damages, and of Armstrong, S&M Moving, and Mayflower as defendants. (Doc. 12 at 1–2, 13–17). The Frankowskis concede that dismissal of their state law tort and contract claims against all defendants is proper and that they may recover only the damages available under the Carmack Amendment, but they oppose dismissal of Armstrong, S&M Moving, and Mayflower. (Doc. 20 at 2, 5).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion to dismiss. Based on the Frankowskis' concession, the court **WILL DISMISS** the state law claims and the demand for punitive and mental anguish damages **WITH PREJUDICE** and without further discussion. *See* 49 U.S.C. § 14706(a)(1) ("The liability imposed under this paragraph is for the actual loss or injury to the property . . . ."). The court **WILL DENY** the motion to dismiss Armstrong, S&M Moving, and Mayflower because the Frankowskis specifically allege that each defendant was involved in the shipment of the goods and the defendants have not persuaded the court that United Van Lines' status as their principal eliminates their potential liability.

2

## I.      BACKGROUND

In considering a motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiffs. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider evidence attached to a defendant's motion to dismiss if that evidence was incorporated into the complaint by reference, is of undisputed authenticity, and is central to the plaintiffs' claims. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Defendants submit bills of lading[1] for the two deliveries at issue in this case. (Docs. 12-1, 12-2). The complaint refers to the bills of lading, they are central to the Frankowskis' claim (*see* doc. 1 at 4 ¶ 12, 5 ¶ 15), and the Frankowskis do not dispute their authenticity (*see* doc. 20 at 4). Accordingly, the court's description of the facts includes the bills of lading. However, where the allegations in the complaint specifically contradict the content of the bills of lading, the court must accept as true the allegations in the complaint. *See, e.g.*, *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss.").

---

[1] Under the pertinent regulations, a "[b]ill of lading means both the receipt and the contract for the transportation of the individual shipper's household goods." 49 C.F.R. § 375.103.

In July 2020, the Frankowskis contracted with Evergreen Van Lines to move the contents of their house from Crystal Bay, Nevada to Birmingham, Alabama. (Doc. 1 at 3 ¶ 8). When Evergreen Van Lines failed to send a suitable truck for a cross-country move, Evergreen arranged for another company, Roadrunner Movers, to take over the move. (*Id.*). Roadrunner did send a truck and movers, but when the Frankowskis caught an employee stealing electronics and complained, Roadrunner took the Frankowski's possessions to its facility in Union City, California instead of delivering them to Birmingham. (*Id.* at 3–4 ¶¶ 8–9).

The Frankowskis "were forced to hire another company, S&M Moving and/or United Van Lines to" pick up and deliver their possessions from the Union City facility to Alabama. (*Id.* at 4 ¶ 12). United Van Lines created the bill of lading, which identifies Armstrong as its "destination agent." (Doc. 1 at 4 ¶ 12; doc. 12-1 at 2). United Van Lines also created a "Descriptive Inventory," which lists S&M Moving as the carrier. (Doc. 1 at 4 ¶ 12). The Frankowskis' complaint states their belief that United Van Lines hired S&M Moving to pick up and ship the items to Alabama. (*Id.*). Either S&M Moving or Armstrong (as United Van Lines' agent) picked up the Frankowskis' household goods and delivered them to Birmingham. (*Id.* at 4 ¶ 13; doc. 12-1 at 2). A "substantial amount" of the items were damaged on delivery. (*Id.* at 4–5 ¶ 13).

With respect to the storage unit pickup, United Van Lines again created the bill of lading, which lists Armstrong as the "destination agent." (Doc. 12-2 at 2). In addition, United Van Lines' website lists Mayflower as "a sister company and active competitor of United Van Lines."[2] (Doc. 1 at 5 ¶ 15). Either Mayflower or Armstrong (as United Van Lines' agent) picked up the contents of the storage unit and delivered them to Birmingham. (*Id.* at 5 ¶ 16; doc. 12-2 at 2). Again, there was "substantial damage to much of" the property. (Doc. 1 at 5 ¶ 16).

## II.   DISCUSSION

The only claim remaining in this case is for liability under the Carmack Amendment, 49 U.S.C. § 14706(a)(1). The Frankowskis assert that claim against all defendants. (Doc. 1 at 6). Armstrong and S&M Moving contend that the court should dismiss them as defendants because they were acting as United Van Lines' agents and, under 49 U.S.C. § 13907 and common law, United Van Lines bears the sole liability for the acts of its "disclosed agents."[3] (Doc. 12 at 14–18). Mayflower contends that the court should dismiss it because the bills of lading establish that

---

[2] Both parties argue about the relevance of a "Mayflower inventory form bearing Mayflower's tradename." (Doc. 12 at 17; doc. 20 at 3). The complaint does not mention any such inventory form, so the court cannot and does not consider the form in this opinion.

[3] In its reply brief, United Van Lines offered to stipulate that it is responsible for any damages Armstrong or S&M Moving caused. (Doc. 22 at 4–5). The Frankowskis have not accepted that stipulation, so the court cannot rely on it in deciding this motion to dismiss.

United Van Lines did both deliveries and Mayflower was not involved in either. (*Id.* at 17–18).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In relevant part, the Carmack Amendment to the Interstate Commerce Act makes carriers liable to shippers for loss or damage to shipments in interstate commerce:

> A carrier . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading. . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C. § 14706(a)(1). In plain English, the Carmack Amendment imposes on both the motor carrier that receives goods from the shipper "and any other carrier that delivers the property" liability for "actual loss or injury" to property. *Id.* By its terms, however, the Carmack Amendment does not permit a shipper to hold liable "connecting carriers"—those who transport goods from the receiving carrier to the

delivering carrier. *See id.* Instead, a shipper whose goods are damaged en route can sue the receiving carrier, the delivering carrier, or both. *See id.* The carrier ultimately held liable for the damage can then "recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property." *Id.* § 14706(b). Section 14706 also sets out venue rules for "civil action[s] under this section . . . brought against a delivering carrier" and, separately, those "brought against the carrier alleged to have caused the loss or damage." *Id.* § 14706(d)(1)–(2).

A different part of the Interstate Commerce Act, enacted as part of the Household Goods Transportation Act of 1980, *see* Pub. L. 96-454, 94 Stat. 2011 (1980), provides that "[e]ach motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services . . . and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier." 49 U.S.C. § 13907(a).

According to the allegations in the complaint and the bills of lading, United Van Lines was a motor carrier that issued bills of lading for the two deliveries at issue in this case. (Doc. 1 at 4 ¶ 12, 5 ¶ 15; docs. 12-1, 12-2). Both bills of lading identified Armstrong as the "destination agent." (Doc. 12-1 at 2; doc. 12-2 at 2). But the Frankowskis allege that either S&M Moving or Armstrong picked up the first

delivery; either Mayflower or United Van Lines picked up the second delivery; and either Mayflower or Armstrong delivered both shipments. (Doc. 1 at 4 ¶ 13, 5 ¶¶ 15–16; doc. 12-1 at 2; doc. 12-2 at 2). The court must accept those allegations as true. *See Butler*, 685 F.3d at 1265; *see, e.g., Saunders*, 766 F.3d at 1270.

### 1. Armstrong and S&M Moving

Armstrong and S&M Moving contend that § 13907, in combination with common law principles of agency law, protects them from liability because they were acting as United Van Lines' agents when they transported the Frankowskis' household goods. (Doc. 12 at 15–17). The court is not persuaded.

The bills of lading establish that Armstrong was United Van Lines' agent[4] and the Frankowskis allege that United Van Lines hired S&M Moving to pick up and ship their items for it. (Doc. 1 at 4 ¶ 12; doc. 12-1 at 2; doc. 12-2 at 2). There is also no dispute that all of the carriers involved in this case were transporting household goods and no party has raised any issue relating to any agent's actual or apparent authority or ratification—indeed, United Van Lines affirmatively argues that Armstrong and S&M Moving were its agents. (*See generally* doc. 12 at 14–15). The court must therefore address whether, under the Carmack Amendment and § 13907, a motor carrier's agent is immune from any and all liability for damage to household

---

[4] The Frankowskis' contention that the bill of lading did not disclose "Armstrong Transfer & Storage Company" as United Van Lines' agent because it identified "Armstrong Relocation Company" is entirely meritless. The Frankowski's complaint specifically alleges that Armstrong goes by both names. (Doc. 1 at 1 ¶ 2).

goods it transports. The plain language of § 13907 does not provide any such immunity. That statute imposes liability on a principal for all the acts or omissions of its agents (as long as the agent's acts or omissions related to the performance of household goods transportation services and the agent had actual or apparent authority or the ratification of the carrier). *See* 49 U.S.C. § 13907(a). But the text of the statute does not totally preclude liability of motor carriers acting as agents.

Moreover, the Carmack Amendment expressly provides that the carrier issuing a bill of lading "*and any other carrier that delivers property* . . . are liable to the person entitled to recover under the receipt or bill of lading." *Id.* § 14706(a)(1) (emphasis added). This language suggests that a motor carrier's agent can also be liable if the agent is itself a motor carrier that delivers property. *See also Missouri, K. & T. Ry. Co. of Tex. v. Ward*, 244 U.S. 383, 387–88 (1917) (explaining that under the Carmack Amendment, connecting carriers "become in effect mere agents, whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier" and holding that a shipper can hold the connecting carriers liable); *see also Mexican Light & Power Co. v. Texas Mexican Ry. Co.*, 331 U.S. 731, 733 (1947) ("While each connecting carrier is, of course, liable for damage occurring on its line, only the initial carrier is liable for damage on any of the connections.").[5]

---

[5] *Ward* and *Texas Mexican Railway Company* were both decided under a previous version of the Carmack Amendment that did not include any language extending liability to delivering

Armstrong and S&M Moving, however, argue that, aside from the statutory language, common law agency principles mandate that agents cannot be held liable for damages under the Carmack Amendment. (Doc. 12 at 15–17). They cite a plethora of district court opinions, most of which cite to each other and to two Fifth Circuit cases; it also relies on cases from the Second and Seventh Circuits. (*Id.*); *see, e.g.*, *Marks v. Suddath Relocation Sys, Inc.*, 319 F. Supp. 2d 746, 752 (S.D. Tex. 2004). The court does not find the district court cases persuasive, and it finds the circuit cases distinguishable.

Defendants maintain that *Lake City Stevedores, Inc. v. E.-W. Shipping Agencies, Inc.*, 474 F.2d 1060, 1061 (5th Cir. 1973)[6] and *Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.*, 750 F.2d 457, 459 (5th Cir. 1985) support its position that "long-standing federal law states that an agent of a disclosed principal cannot be liable pursuant to the duly issued bill of lading contract." (Doc. 12 at 16). As an initial matter, these cases have nothing to do with an agent's liability under a bill of lading. Neither involve disputes between the shipper and the carrier; in both cases, agents executed contracts on behalf of their principals for stevedore services.

carriers. *Compare* Pub. L. 59-337, 34 Stat. 584, 595 (1906) *with* Pub. L. 95-473, 92 Stat. 1337, 1453 (1978).

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The Fifth Circuit decision in *Lake City Stevedores*—the only case binding on this court—was based entirely on agency principles limiting an agent's liability for executing a contract on behalf of a principal. *See* 474 F.2d at 1063–64 (citing Restatement (Second) Of Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.")). In *Atl. & Gulf Stevedores, Inc.*, the Fifth Circuit relied in part on *Lake City Stevedores* to hold that an agent who executes a contract on behalf of his principal is not liable for claims arising out of nonpayment under the contract even where the agent failed to follow the principal's instructions. Like *Lake City Stevedores,* the contract at issue had nothing to do with the obligations of the shipper or the carrier. And, like *Lake City Stevedores*, the decision was compelled by the Restatement (Second) of Agency § 342(1) (1958) which provides that "[a]n agent who receives money or other thing from his principal to pay or transfer to another person is not thereby liable to the other." *Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc.*, 750 F.2d 457, 459 (5th Cir. 1985). Although § 342 acknowledges exceptions to this rule, the Fifth Circuit found that those exceptions did not apply. *Id.*

Neither *Lake City Stevedores* nor *Atlantic & Gulf Stevedores* holds that the Interstate Commerce Act immunizes an agent from liability. Both cases rely on specific sections of the Restatement that have no application here. And *Atlantic &*

11

*Gulf Stevedores* acknowledged exceptions to the rule on which it rested. *See* 750 F.2d at 458. Those exceptions include "agent's liability in tort for failure of performance" and an agent's "responsib[ility] to [a third party beneficiary] for his nonperformance or misperformance [of a contract]." Restatement (Second) of Agency § 342 cmt. a (1958); *see also* Restatement (Third) of Agency § 7.02 cmt. b (2006) ("An agent is subject to liability to a third party only when the agent's conduct breaches a duty that the agent owes the third party. The duty may be derived from tort law, . . . [or] from a promise made by the agent to the principal for which the third party is an intended third-party beneficiary . . . ."); *id.* § 7.02 cmt. c ("An actor who . . . negligently causes [physical impairment of . . . tangible personal property] is subject to liability for it. An agent has a duty to exercise reasonable care in rendering services to a third person when the agent undertakes to do so to perform a duty owed by the principal to the third party.") (citation omitted).

Similarly, the Second and Seventh Circuit cases cited fail to persuade the court of the existence of a common law rule that an agent transporting household goods on behalf of a principal is immune from damages. In the Seventh Circuit case, Defendant Kerr Steamship Co. signed a bill of lading as an agent for "P. J. Janzen, Master" of a ship. *Valkenburg, K.-G. v. The Henry Denny*, 295 F.2d 330, 332 (7th Cir. 1961). The Seventh Circuit held that because the bill of lading contained enough information for "a reasonable person" to discern the identity of Kerr's principal, Kerr

12

could not be held liable under the bill of lading. *Id.* at 333. This case, too, is distinguishable because it relates to holding an agent liable for execution of a contract on behalf of a disclosed principal, not performance of the agent's duties to the principal or plaintiff.

The Second Circuit case Armstrong and S&M Moving cite supports this reading of the cases. In that case, a purchaser of goods that were lost at sea sued, among others, the charterer's agent, Hansen. *Seguros Banvenez, S.A. v. S/S Oliver Dresher*, 761 F.2d 855, 858 (2d Cir. 1985). The district court granted summary judgment in favor of the plaintiffs and against Hansen. *Id.* at 859. The Second Circuit acknowledged the general rule that an agent is not liable for a principal's breach of a contract to which the agent was not a party but explained that "an agent might be liable if it acted outside the scope of its agency or negligently." *Id.* at 860 (citations omitted). Because there were questions of fact about whether Hansen acted negligently, summary judgment against Hansen was improper. *Id.* Although Armstrong and S&M Moving cite this case as support for the proposition that "the agent of a disclosed principal cannot be held liable pursuant to the duly issued bill of lading contract" (doc. 12 at 16), the case stands for the proposition that an agent can, in appropriate circumstances, be held liable.

In addition, the court notes that there is tension between the circuits about whether a claim under the Carmack Amendment sounds in tort or contract. If a claim

under the Carmack Amendment sounds in tort, agency principles governing contracts would not apply. The Eighth Circuit has held that claims under the Carmack Amendment sound in tort. *Fulton v. Chi., Rock Island & P. R. Co.*, 481 F.2d 326, 333 (8th Cir. 1973). Similarly, the Tenth Circuit has stated that "the Carmack Amendment was a codification of the common law rule of liability for negligent damage to goods." *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1117 (10th Cir. 1989). On the other hand, the Seventh Circuit has expressed doubt about whether such a claim sounds in tort. *See N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir. 1996) (characterizing the Eighth Circuit's analysis as dicta and stating "[w]e do not fully agree with this dicta," but declining to explain why because it was "unnecessary for us to detail our divergent view"). In light of the lack of in-depth briefing on this issue, the court declines to weigh in at this point.

In short, Armstrong and S&M Moving's argument does not persuade the court that they are, effectively, immune from suit because they acted as agents for United Van Lines. Accordingly, the court **DENIES** the motion to dismiss Armstrong and S&M Moving as defendants.

2. Mayflower

Mayflower contends that it should be dismissed because, given the two bills of lading that identify United Van Lines as the motor carrier, there are no plausible

14

allegations that the Frankowskis entered a contract with Mayflower and they cannot hold Mayflower liable under the Carmack Amendment. (Doc. 12 at 17–18). Mayflower cites no law in support of its contention, and indeed the Carmack Amendment provides that "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier," 49 U.S.C. § 14706(a)(1), indicating that it is possible for a motor carrier to be liable even without a bill of lading.

In addition, Mayflower ignores the Frankowskis' specific allegation that they "hired United Van Lines and/or Mayflower Transit" and that "Mayflower Transit, LLC and/or Armstrong Relocation and/or United Van Lines delivered all of Plaintiffs' goods." (Doc. 1 at 5 ¶¶ 15–16); *see* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1283 (4th ed. April 2022 Update) ("Under Federal Rule 8(d)(2) a party may include inconsistent allegations in a pleading's statement of facts."). Finally, although the bills of lading establish that the Frankowskis hired United Van Lines, the bills do not prove that Mayflower was completely uninvolved in the delivery of the items such that the court can disregard the Frankowskis' allegations to the contrary. Accordingly, the court **WILL DENY** the motion to dismiss Mayflower as a defendant.

### III.    CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion to dismiss. The court **WILL DISMISS** the state law claims and the demand for punitive and mental anguish damages, but **WILL DENY** the motion to dismiss Armstrong, S&M Moving, and Mayflower as defendants.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this April 11, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE